**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 10-60156-CIV-SEITZ/SIMONTON

ELIZABETH ORDONEZ,

        Plaintiff,

vs.

ICON SKY HOLDINGS LLC, *et al.,*

        Defendants.

_____/

## ORDER GRANTING IN PART MOTION FOR FINAL DEFAULT JUDGMENT AND CLOSING CASE

This cause is before the Court on Plaintiff's Motion for Final Judgment and Permanent Injunction [DE-25] and Plaintiff's Renewed Motion for Final Default Judgment and Permanent Injunction [DE-28], together with Plaintiff's Incorporated Memorandum of Law, and the April 8, 2010 Defaults entered by the Clerk of the Court of the United States District Court for the Southern District of Florida against Defendants, Icon Sky Holdings LLC [DE-23] and Nisha Elizabeth George [DE-16] (collectively the "Defendants"). As Defendants have failed to appear, answer, or otherwise defend this action,[1] and given the documentary evidence submitted in support of the motion, the Court shall grant in part Plaintiff's Renewed Motion for Final Default Judgment.

---

[1]On August 8, 2011, long after the entry of the April 8, 2010 Clerk's Defaults, Defendant Icon Sky Holdings, LLC filed an Answer and Counterclaim [DE-31], which the Court struck because it was not filed by an attorney. Neither Defendant has attempted to set aside the Clerk's Defaults.

## I.      FACTS ALLEGED IN THE COMPLAINT

On February 2, 2010, Plaintiff Elizabeth Ordonez filed suit against Defendants Nisha

Elizabeth George ("George") and Icon Sky Holdings, LLC ("Icon Sky") for false designation of

origin and unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement

and unfair competition under Florida Statutes §§ 2.01 and 495.161, tortious interference with a

contractual relationship, tortious interference with an advantageous business relationship, libel

per se, and deceptive and unfair trade practices in violation of Florida Statutes § 501.201, *et. seq.*

Plaintiff seeks declaratory judgment as to ownership of the Elizabeth Sky service mark and

trademarks and cancellation of Defendants' Elizabeth Sky service mark and trademark

applications in the United States Patent and Trademark Office ("USPTO") as well as damages.

After Defendants failed to appear, respond or otherwise defend, the Clerk of Court, pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure, entered a default against both Defendants.

On January 20, 2011, Plaintiff filed and served this instant motion for entry of final default

judgment, to which Defendants have failed to respond.  Accordingly, by defaulting, Defendants

"admit the plaintiff's well-pleaded allegations of fact" as set forth in the operative complaint.

*Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987).  By affidavit, Plaintiff has sworn that she

has personal knowledge of the facts contained in the Complaint and that all such facts, to the best

of her knowledge, are true and correct.  As such, the well-pleaded factual allegations as set forth

in the Complaint are as follows:

### A.      *The Parties*

Plaintiff is an established professional dancer, model, choreographer, actress, host and

recording artist.  Compl., ¶ 15 [DE-1].    Ms. Ordonez is known by her fans, professionals and

2

celebrities in the entertainment industry as Elizabeth Sky. *Id.* Defendant Icon Sky is a Texas limited liability company formerly named Pure Icon Ltd. Co. *Id.* at ¶ 8. Icon Sky does business under many fictitious and/or assumed names, including, but not limited to, Pure Icon Ltd. Co., Pure Icon International, Pure Icon Entertainment, and Pure Icon, Inc. *Id.* at ¶ 10. Defendant George is the single managing member of Icon Sky. *Id.* at ¶ 13. George used and continues to use many aliases including but not limited to Nisha Behave, Elizabeth Behave, Liz Behave, Miss Behave, Elizabeth Skye, and Elizabeth Sky. *Id.* at ¶ 12. At all times material hereto, George controlled Icon Sky to such an extent that she deprived the LLC of its independent existence. *Id.* at ¶ 63. As such, George and Icon Sky are the alter egos of one another.

   B.  *Plaintiff's Usage of the Elizabeth Sky Mark*

   Ms. Ordonez assumed the stage name of Elizabeth Sky as early as June 30, 2006, and this name became present in interstate commerce as early as September 1, 2006. *Id.* at ¶17. For example, Plaintiff's talents via her Elizabeth Sky stage name have been showcased through online portfolios containing pictures, video clips and sound recordings on social networking websites, online talent databases and media websites, such as MySpace, ModelMayhem.com and YouTube. *Id.* at ¶ 18. Additionally, Plaintiff's association with entertainment services, audio and audiovisual recordings, hat sales and similar goods and services is depicted on other social networking sites such as Facebook and Twitter. *Id.* at ¶ 19. Online entertainment industry publications such as www.The305.com and www.NoBodiesCrew.com also spotlight Plaintiff as Elizabeth Sky on their websites. *Id.* at ¶ 20. This online presence as Elizabeth Sky on these websites aides Ms. Ordonez in the state of Florida as well as both nationally and internationally in procuring audition opportunities and booking entertainment jobs as a model, singer, dancer,

actress, choreographer, performer and recording artist. *Id.* at ¶ 21. In addition to her work in the entertainment industry, Plaintiff also designs and sells her own brand of hats called "Funktality by Elizabeth Sky." *Id.* at ¶ 22. Each custom designed hat contains a tag affixed to the underside of its brim which says "Funktality by Elizabeth Sky." *Id.* These hats were present in interstate commerce as early as December 25, 2006. *Id.*

      C.     *Plaintiff's IC 9 Trademark and IC 41 Service Mark Application*

On April 21, 2009, Plaintiff filed an application for an International Class ("IC") 9 trademark and IC 41 service mark for Elizabeth Sky in the United States Patent and Trademark Office ("USPTO") *Id.* ¶ 23. The Trademark Official Gazette published her Elizabeth Sky IC 9 and IC 41 mark on August 18, 2009. *Id.* at ¶ 24. On December 16, 2009, Icon Sky filed an opposition to Plaintiff's application for the Elizabeth Sky IC 9 and 41 marks in the Trademark Trial and Appeal Board ("TTAB"). *Id.* at ¶ 27. George signed Icon Sky's opposition using her alias "Elizabeth Sky, Officer of Icon Sky Holdings, LLC." *Id.* at ¶¶ 28, 29.

      D.     *Defendants' IC 9 Trademark, IC 41 Service Mark and IC 25 Trademark*
              *Applications*

On April 27, 2009, six days after Plaintiff filed her IC 9 and IC 41 application, George filed an IC 41 application in the USPTO for an Elizabeth Sky service mark. She listed "Elizabeth Sky" and "DBA Elizabeth Sky c/o Pure Icon Entertainment" as the initial owner/applicant. *Id.* at ¶¶ 32, 33. The USPTO assigned ownership of the Elizabeth Sky IC 41 service mark to Icon Sky on June 19, 2009. *Id.* at ¶ 42.

Prior to Defendant George filing her IC 41 application, she was aware of Plaintiff's use of the Elizabeth Sky mark in association with entertainment services, audio and audiovisual

recordings and other similar goods and services. *Id.* at ¶ 34. Additionally, Defendant George's alleged use of the Elizabeth Sky IC 41 mark in association with audio and audiovisual recordings, entertainment services, or similar goods or services, occurred if at all, after Plaintiff's use of her Elizabeth Sky mark in interstate commerce and acquisition of common law rights in the same. *Id.* at ¶ 37. Contrary to George's allegations in her IC 41 application, she has not used the Elizabeth Sky IC 41 service mark in this manner since as early as August 1991, nor has her Elizabeth Sky IC 41 service mark been present in this manner in interstate commerce since as early as January 1997. *Id.* at ¶¶ 35, 36.

On August 1, 2009, George filed an IC 25 trademark application for Elizabeth Sky in the USPTO, listing "Elizabeth Sky, DBA Elizabeth Sky" as the initial owner/applicant. *Id.* at ¶¶ 64, 65. The Trademark Official Gazette published the application on December 29, 2009. *Id.* at ¶ 71. The IC 25 class of goods and services encompasses the same types of goods and services that Plaintiff uses in association with her Funktality by Elizabeth Sky hat line. *Id.* at ¶ 66. Prior to George filing her IC 25 application, she was aware of Plaintiff's use of the Elizabeth Sky trademark in association with the hat line. *Id.* Defendant George also submitted specimens with her IC 25 application consisting of pieces of paper with the words "Elizabeth Sky" printed on them. These specimens appear to be tags as they are attached to a string; however, they are not affixed to clothing. In fact, none of the specimens consist of actual, or pictures of actual, clothing, hats or similar goods or services, other than what appears to be the belt loop of a pair of pants. *Id.* at ¶ 67.

Despite contrary allegations in her IC 25 application, Defendant George has not used her Elizabeth Sky IC 25 trademark in association with clothing, hats or similar goods or services

since as early as January 1997, nor has she been using the Elizabeth Sky IC 25 trademark in such a manner since January 2003. *Id.* ¶¶ 68, 69. Instead, she did not begin using the Elizabeth Sky trademark in association with any goods or services in IC 25, if at all, until after Plaintiff began using the Elizabeth Sky mark for clothing in interstate commerce and acquired common law trademark rights in the same. *Id.* at ¶ 70.

   *E. Defendants' Use of the Elizabeth Sky Mark*

   At all material times prior to Plaintiff filing her Elizabeth Sky IC 9 and 41 application, a search of the words "Elizabeth Sky" on the USPTO Trademark Electronic Search System ("TESS") yielded no results for the term "Elizabeth Sky." Additionally, a search for Elizabeth Sky on major search engines such as Yahoo and Google provided no evidence of Defendants' alleged use of the Elizabeth Sky mark in interstate commerce.

   After Plaintiff filed her IC 9 and 41 application, she discovered multiple new websites containing the words "Elizabeth Sky" in the URLs.[2] *Id.* at ¶ 45. These website were acquired after Plaintiff filed her IC 9 and 41 application, and are continually updated and owned and/or controlled by George and/or Icon Sky. *Id.* at ¶¶ 46, 47, 48. During the same time period, Plaintiff also discovered new web pages on online social networks using the name Elizabeth Sky in association with entertainment services, audio and audiovisual recording, clothing or similar goods or services on social networks.[3] *Id.* at ¶ 49. These web pages were also acquired and/or

---

[2]   Specifically, www.elizabethsky.net (created on or about April 25, 2009); www.elizabethsky.org (April 25, 2009); www.elizabeth-sky.com (created on or about April 25, 2009); www.elizabethskytv.com (created on or about May 16, 2009); and www.elizabethskyclothing.com (created on or about May 16, 2009).
[3]   www.myspace.com/elizabeth_sky, www.myspace.com/elizabethskytv, www.twitter.com/elizabethsky, www.twitter.com/elizabeth_sky, www.twitter.com/elizabethskytv, www.linkedin.com/in/elizabethskytv, www.elizabethsky.bigcartel.com, www.dipdive.com/member/elizabethsky,

created by George and/or Icon Sky. *Id.* at ¶ 50, 51.  Additionally, on or around the date that George filed her IC 41 service mark application, George and/or Icon Sky made updates to the content and links on their "www.pureicon.com" website to reflect use of their Elizabeth Sky IC 41 mark in association with entertainment services, audio and audiovisual recordings, clothing or similar goods or services.[4] *Id.* at ¶ 43.

Also, Defendant George previously owned trademark rights in an IC 41 service mark "Miss Behave" which she abandoned on October 28, 2002.  *Id.* at ¶ 38.  However, the artwork, photographic images and text on some of the documents and a specimen that George submitted to the USPTO as part of her Elizabeth Sky IC 41 application is almost identical to the artwork, photographic images and text on some of the documents and a specimen that George submitted as part of her Miss Behave IC 41 application. As to the specimen, aside from the bottom of it which states "Pure Icon – Elizabeth Sky" as opposed to "Pure Icon – Miss Behave," the specimens are virtually identical.  Defendant used graphic editing software prior to submission of the applications to add the words "Elizabeth Sky" to that specimen as well as other documents that the term was not originally a part of in an effort to fraudulently demonstrate that she had previously used the mark Elizabeth Sky in association with the services alleged in her applications.

---

www.facebook.com/elizabethsky www.jamuse.com/viewprofile.aspx?userid=13614, www.songkick.com/concerts/2433606-elizabeth-sky-at-pacha, www.stylehive.com/person/elizabethsky, www.thedjlist.com/djs/elizabeth_sky, and www.ustream.tv/elizabethsky.

[4]     Specifically, the www.pureicon.com website contained the following text: "For 2009 we will be unveiling a music based entertainment television show hosted by producer and artist Elizabeth Sky aka the original Miss Behave." *Id.* at ¶ 44.

F.    *Defendants' Other Tortious Conduct Against Plaintiff*

Defendants also directed a series of tortious acts against Plaintiff consisting of interfering

with Plaintiff's contractual relationships, interfering with Plaintiff's advantageous business

relationships, and libel.  As to the first, Plaintiff previously established contractual relationships

with social networks such as MySpace, Facebook, ModelMayhem.com and Twitter by virtue of

these networks' policies which prompt new users to agree to the networks' "terms of use" before

creating an account and webpage.  *Id.* at ¶ 52.  After Plaintiff filed her IC 9 and 41 application,

George, individually or jointly and severally through Icon Sky, contacted these networks and

made trademark infringement complaints against Plaintiff.  *Id.* at ¶ 54.[5]  These complaints

resulted in the cancellation or change of many of Plaintiff's website accounts using the name

Elizabeth Sky and thus interfered with her use of her Elizabeth Sky mark.  *Id.* at ¶ 55.  Following

the complaints, George and/or Icon Sky acquired and now control the Twitter profile which

previously belonged to Plaintiff.[6]  *Id.* at ¶ 56.  Such acquisition led to confusion among Plaintiff's

fans and entertainment industry professionals who followed Plaintiff's Twitter profile.  *Id.* at ¶

57.  Additionally, sometime after May 5, 2009, Plaintiff's electronic press kit (EPK) entitled

"Elizabeth Sky – EPK," which was posted on YouTube on October 12, 2008 by one of her

colleagues, was removed and replaced with a message stating the video is no longer available due

to an alleged trademark claim by Defendants.  *Id.* at ¶ 58.

---

[5]      For example, a message was sent to Plaintiff by a ModelMayhem.com moderator
saying "Due to an issue with a trademark, we were forced to change the name on your
profile. I hope you like the name we chose, if not, feel free to change it but please do not
use Elizabeth Sky again." *Id.* at ¶ 53.

[6]      *See* www.twitter.com/elizabethsky.

With regard to the second type of action, Defendants threatened national, international, and Florida based[7] third parties that have either worked with Plaintiff in the entertainment industry or have spotlighted her as Elizabeth Sky. *Id.* at ¶ 59. Such correspondence demanded that these third parties remove any pictures or references to Plaintiff and threatened legal action for failure to comply. *Id.*

As to the libel, Defendants posted warning messages containing false accusations about Ms. Ordonez on online social networks and websites owned, controlled and/or created by George and/or Icon Sky. The language used is identical or substantially similar to the following: (1) "A female Hispanic from Greenacres, Florida named Elizabeth Ordonez is pretending to be Elizabeth Sky, trying to steal her identity. We are in no way associated with the individual and pursuing legal actions;" and (2) "The real ELIZABETH SKY. Advancing entertainment! A Florida female named Elizabeth Ordonez is trying to steal my name/identity so watch out for frauds!" *Id.* at ¶ 60.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant, who, like Defendants here, failed to file a timely responsive pleading. By such a default, all of Plaintiff's well-pled allegations in the Complaint are deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359,361 (11th Cir. 1987); *Petmed Express, Inc. v. Medpots.com*, 336 F. Supp. 2d 12 13, 121 7 (S.D. Fla. 2004). If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages. Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v.*

---

[7]    Specifically, Defendants sent emails to the Florida based website "The305.com" and the Florida limited liability company No Bodies Crew.

*Smyth*, 420 F.3d 1225, 1232  n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings

in a permissive tone . . . We have held that no such hearing is required where all essential

evidence is already of record." (citations omitted)); *see also Petmed Express*, 336 F. Supp. 2d at

1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act

case without a hearing). In this case, a hearing on damages is unnecessary as Plaintiff has

submitted detailed declarations with accompanying documentary evidence in support of her

damages request.

## III.   LIABILITY

### A.      *False Designation of Origin and Unfair Competition*

Plaintiff requests injunctive relief with regard to Defendants' infringement of Plaintiff's

Elizabeth Sky mark in violation of § 1125(a) of the Lanham Act and Florida Statute § 495.161.

To prevail on a claim of false designation of origin and unfair competition under § 1125(a) of the

Lanham Act, a plaintiff must prove the following elements: (1) that she had a valid trademark

and (2) that the defendant had adopted an identical or similar mark such that consumers were

likely to confuse the two. *See* 15 U.S.C. § 1125(a); *Lone Star Steakhouse & Saloon, Inc. v.

Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir.1997). The plaintiff's use of the mark must

also predate the defendant's potentially confusing mark. *See Tally-Ho, Inc. v. Coast Community

College Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1990). Willful infringement may be inferred from

a defendant's willingness to accept a default judgment. *Arista Records, Inc. v. Beker Enters*. 298

F. Supp. 2d 1310, 1313 (S.D. Fla. 2003).  Similarly, Florida statute 495.161 "explicitly preserves

common law rights in marks acquired in good faith," and the legal standards for federal unfair

competition under the Lanham Act and common law trademark infringement and unfair

10

competition are essentially the same. *Tally-Ho, Inc.*, 889 F.2d at 1023, 1025-26. In order to establish a claim in a Florida trademark infringement and unfair competition challenge, a plaintiff must establish (1) the deceptive or fraudulent conduct of a competitor and (2) a likelihood of consumer confusion. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007)

Considering the elements to establish a federal unfair competition claim under the Lanham Act and to establish a common law trademark infringement and unfair competition claim are essentially the same, they will be discussed as one. The unchallenged facts of Plaintiff's Complaint support the elements for each claim. First, Plaintiff's use of the Elizabeth Sky marks predate Defendants' use of the same marks and, thus, she has valid common law service and trademark rights in Elizabeth Sky. Second, Defendant's requested IC 41 and IC 25 Elizabeth Sky marks are likely to confuse consumers because Defendants have used the marks, which are the same as Plaintiff's marks, in association with entertainment services, audio and audiovisual recordings and similar goods and services. Such areas are precisely those in which Plaintiff uses her Elizabeth Sky mark. Additionally, with regard to the Florida claim, Defendants' conduct was deceptive and fraudulent because Defendants' associations with the aforementioned services as Elizabeth Sky were not in existence during the time periods alleged in the application. Instead, the term Elizabeth Sky was merely added to previously established websites and "photoshopped" to pictures and periodicals to demonstrate that the name had been used in interstate commerce. Consequently, Plaintiff satisfies both the elements for a federal violation of the Lanham Act and Florida trademark infringement and unfair competition laws and has the right to enjoin Defendants' use of the Elizabeth Sky mark.

11

B.      *Tortious Interference With Contractual Relationships and Advantageous Business Relationships*

Plaintiff requests injunctive relief as well as damages for Defendants' tortious interference with both Plaintiff's contractual relationships as well as advantageous business relationships. In order to establish a prima facie case for tortious interference with a contractual relationship a plaintiff must establish the following four elements: (1) the existence of a contractual relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and, (4) damage to the plaintiff as a result of the breach of the relationship. *KMS Restaurant Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004). In order to establish a prima facia case for tortious interference with an advantageous business relationship a plaintiff must establish four nearly identical elements: (1) the existence of a contractual relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and, (4) damage to the plaintiff as a result of the breach of the relationship. *Gossard v. Adia Services, Inc.*, 723 So. 2d 182, 184 (Fla. 1998).

The well-pled facts set forth in the Complaint establish that Plaintiff has met each of these elements with regards to both claims. As to the contractual relationship cause of action, first, a contractual relationship existed between Plaintiff and third party social networks including but not limited to Myspace, Facebook, Twitter and ModelMayhem.com by virtue of the network policies which prompt new users to agree to the network's terms of use before creating an account and webpage. Second, Defendants knew that Plaintiff had contractual relationships with such third parties because it is general knowledge that in order to obtain an account with a social

12

network on the internet the user must agree to the site's terms of use. Third, Defendants intentionally and unjustifiably interfered with the contractual relationships by misleading Facebook, Twitter and ModelMayhem as to who is the rightful owner of the Elizabeth Sky mark. Finally, Plaintiff has been injured as a direct and proximate result of Defendants' conduct because the removal of Plaintiff's social network web pages deprived Plaintiff of work, as those webpages were sources of leads for entertainment industry work and for the sale of her Funktality by Elizabeth Sky hat line. As such, Plaintiff satisfied each of the four requisite elements and is entitled to both injunctive relief and actual damages for Defendants' tortious interferences with her contractual relationships.

With regard to the second cause of action, first, Plaintiff had advantageous business relationships with third parties who are based in and/or doing business in Florida, including but not limited to The305.com and No Bodies Crew, LLC. Second, due to Defendants' actions, as described below in element three, it must be inferred that Defendants had knowledge of the relationship between Plaintiff and The305.com and No Bodies Crew, LLC. Third, Defendants intentionally and unjustifiably interfered with such relationships by: (1) falsely accusing Plaintiff of infringing on their alleged rights to the Elizabeth Sky mark and through their demands that these third parties take down any pictures of, or references to, Plaintiff and (2) threatening legal action for failure to comply. Fourth, Plaintiff lost profits from Defendants' conduct because many entertainment industry professionals stopped requesting Plaintiff for jobs, and Plaintiff's business contacts discontinued showcasing Plaintiff on their websites for fear of being sued. Accordingly, Plaintiff also satisfies each of these four elements and is entitled to both injunctive

relief and actual damages for Defendants' tortious interference with her advantageous business relationships.

    C.    *Libel Per Se*

Plaintiff requests that Defendants be enjoined from publishing malicious and false statements about Plaintiff's alleged commission of identity theft and unlawful business practices.[8]  To recover for libel or slander under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the plaintiff suffered damages as a result of the publication. *Thomas v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002) (citing *Valencia v. Citibank Int'l*, 728 So.2d 330 (Fla. 3d DCA 1999)).  However, in a libel per se action, special damages need not be shown to sustain the action because malice is presented as a matter of law in such cases. *Johnson v. Finance Acecptance Co.*, 118 Fla. 397, 400-01 (Fla. 1935).  A publication constitutes libel per se under Florida law if, when considered alone without innuendo, it (a) charges that a person has committed an infamous crime or (b) tends to injure one in his trade or profession. *See Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953).

As set out above, Defendants published two statements which informed the viewers of two third party webpages that a Ms. Ordonez of Greenacres, Florida was committing the fraudulent crime of identity theft.  Such publications are false because Plaintiff owns IC 9 trademark and IC 41 service mark rights in Elizabeth Sky.  Furthermore, the publications injured Plaintiff in her profession because as previously stated, she suffered lost business and career

---

[8]Plaintiff originally sought punitive damages for her libel per se claim.  However, Plaintiff's Renewed Motion for Final Judgment and Permanent Injunction does not contain the request for punitive damages.

opportunities. Additionally, the publications posed a threat to Plaintiff's safety because the statements revealed Plaintiff's real name and city of residence on the World Wide Web. Accordingly, Plaintiff satisfies the elements for libel per se because Defendants' publications were false, about the Plaintiff, published to a third party, and injured Plaintiff in her trade or profession. Thus, Defendants are liable for libel per se, and Plaintiff is entitled to injunctive relief.

D.      Deceptive and Unfair Trade Practices

Plaintiff requests that Defendants be enjoined from engaging in deceptive and unfair trade practices under Florida Statute § 501.201 *et seq.* To be entitled to equitable relief under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), a party must plead and prove that the conduct complained of was unfair and deceptive and that he or she was aggrieved by such acts. *See* Fla. Stat. § 501.201; *Macias v. HBC of Florida*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997). A deceptive act is an act that is likely to mislead consumers. *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000). The pleader need not plead any reliance on the part of the consumer. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 429 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). An unfair practice is one that offends established public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).

Defendants' practices depicted in the Complaint were deceptive, unfair, and caused Plaintiff to be aggrieved. First, Defendants' acts, consisting of transmitting and broadcasting messages on social networking and entertainment websites falsely informing consumers that Ms. Ordonez was stealing Defendants' identity and committing fraud and later hijacking Plaintiff's

15

profile and changing it to their own, are likely to mislead consumers as to the truthful identity of

Elizabeth Sky. Moreover, considering many of the third parties cancelled or changed Plaintiff's

accounts, it must be inferred that such third parties were misled by Defendants' complaints of

trademark infringement. Second, Defendants' aforementioned acts offend established public

policy and are unethical because they intentionally damaged Plaintiff's reputation through

publication of false representations concerning Plaintiff's alleged fraudulent acts. Additionally,

Defendants have achieved their ends by threatening third parties with legal action. Third, as

previously concluded, Plaintiff was aggrieved from Defendants' deceptive and unfair practices

because as a result of such acts she has lost profits and job requests and is no longer showcased

on the social networking and entertainment webpages. Accordingly, Plaintiff satisfies each of the

elements of a FDUTPA claim and is entitled to injunctive relief as a result of Defendants'

engagement in deceptive and unfair trade practices.

## IV.  INJUNCTIVE RELIEF

Plaintiff is entitled to the requested injunctive relief pursuant to 15 U.S.C. § 1116 and

common law.   A plaintiff seeking a permanent injunction must demonstrate that (1) it has

suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to

compensate for that injury; (3) considering the balance of hardship between plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390

(2006).

Here, the well-pled allegations and record evidence demonstrate that Plaintiff has

developed goodwill among the consuming public which would be undermined if Defendants are

16

not prohibited from further infringement of Plaintiff's marks. Defendants' continued use of Plaintiff's marks will create irreparable harm and confusion, particularly because the Defendants are using marks identical to Plaintiff's valid service and trademarks. Furthermore, Defendants willfully infringed Plaintiff's marks and continued to do so even after service of the Complaint in this matter. Such willful conduct demonstrates a likelihood that Defendants would continue to harm Plaintiff's trademark and service mark if the Court declined to issue an injunction. *Petmed Express*, 336 F. Supp. 2d at 1222-23 (entering permanent injunction under 15 U.S.C. § 1116 to prevent further infringement of protected trademarks). Finally, the public would not be disserved by the entry of a permanent injunction because the public has an interest in the proper enforcement of valid service and trademarks.

## V. RELIEF PURSUANT TO 15 U.S.C. § 1125(d)(1)(A)

Plaintiff also seeks relief under 15 U.S.C. § 1125(d)(1)(A), which prohibits cyberpiracy. Specifically, Plaintiff seeks termination by the Registrar and the Internet Corporation for Assigned Numbers (ICANN) of Defendants' capacity to access and use domain names which contain the Elizabeth Sky mark, freezing of these domain names by the Registrar and ICANN, and to have the Registrars reveal the owners, registrants, and administrative contacts and billing information for said domain names. However, Plaintiff's complaint does not allege a cause of action based on a violation of 15 U.S.C. § 1125(d)(1)(A). Thus, Plaintiff is not entitled to such relief.

17

## VI. DAMAGES

Plaintiff's motion seeks monetary damages for Plaintiff's claims of tortious interference with contract and tortious interference with an advantageous business relationship. The motion does not seek damages for any of Defendants' Lanham Act violations. As set forth below, Plaintiff is entitled to $81,000.00 in actual damages.

### A.    Damages for Tortious Interference With Contract

Plaintiff seeks actual damages for Defendants' tortious interference with her existing contracts with social networks, including MySpace, Facebook, Twitter, and ModelMayhem.com. As a result of Defendants' actions, Plaintiff's web pages on these sites have been removed, effectively wiping out Plaintiff's online presence. Plaintiff seeks the cost of rebuilding her web pages which she calculates, based on her work creating the web pages before Defendants' interference, as three years of ten hours per week at $50 per hour for a total amount of $78,000.00. In support of this calculation, Plaintiff has filed the Affidavit of Orit Bodman, C.P.A., who states that $50 an hour is a reasonable charge for a web designer, programmer or marketer to charge. Ms. Bodman also states that this method of valuation is a reasonable method that has been suggested by experts in the field as a method for valuing the cost or value of social media. Accordingly, Plaintiff is entitled to $78,000 in damages for Defendants' tortious interference with Plaintiff's contracts.

### B.    Damages for Tortious Interference With an Advantageous Business Relationship

Plaintiff seeks $243,000 in damages for Defendants' tortious interference with her advantageous business relationships. Plaintiff states that she lost $3000 in fees for performances

18

that her booking company refused to book for her because of Defendants' actions. Plaintiff also seeks additional damages which are duplicative of the damages she seeks for her tortious interference with contract claim. Plaintiff cannot recover these damages twice. Finally, Plaintiff asserts that she is entitled to treble damages under the Lanham Act. While this may be true, Plaintiff is only entitled to treble damages for claims under the Lanham Act. A claim for tortious interference with an advantageous business relationship is a common law claim, which does not entitle a plaintiff to treble damages. Accordingly, Plaintiff is entitled to $3000 in lost profits for Defendants' tortious interference with Plaintiff's advantageous business relationships.

## VII. DECLARATORY JUDGMENT

Plaintiff also seeks declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Plaintiff seeks a declaration that she is the rightful owner of the Elizabeth Sky service mark and trademarks under common law in IC 9, 41, and 25 and in similar classes of goods and services and that Defendants' applications for trade and service marks were fraudulent. Because Plaintiff's use of the marks in IC 9, 41, and 25 predates Defendants' use of the marks, Plaintiff is the owner of the Elizabeth Sky service and trademark under common law. *See Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010).

## VIII. COSTS

Plaintiff asks the Court to award her $1,434.15 in costs. Under the Lanham Act, Plaintiff is entitled to recover her costs "subject to the principles of equity." 15 U.S.C. § 1117(a). However, because § 1117(a) does not specify which costs are recoverable, the Court must follow

19

the limitations set out on 28 U.S.C. §§ 1821 and 1920. *See Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Under 28 U.S.C. § 1920, a court may tax costs for:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under § 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

Many of the costs sought by Plaintiff do not appear to fall into any of these categories and

Plaintiff has not provided the Court with any authority to support the imposition of some of these

costs or with enough details to determine whether the costs are reasonable. For example, the list

of costs submitted by Plaintiff does not indicate how many copies were made or the cost per page

that Plaintiff seeks. Consequently, the Court finds that Plaintiff is entitled to her costs but must

file a separate motion for costs setting out in more detail the costs incurred and the legal authority

for awarding such costs.

## IX. ATTORNEYS' FEES

Plaintiff also seeks her attorneys' fees, which may be awarded under FDUTPA and under

the Lanham Act. However, under the Lanham Act, attorneys' fees are recoverable only in

"exceptional cases." 15 U.S.C. § 1117(a). The Eleventh Circuit has said that an exceptional case

is one where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner.

*Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (citing H.R. Rep. No. 93-524, 93rd Cong., 1st Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133). Based on the facts set forth above, including Defendants interference with Plaintiff's business relationships and contracts, the Court finds that Defendants' actions were willful and deliberate. Consequently, Plaintiff is entitled to her attorneys fees under the Lanham Act. Plaintiff also seeks her fees under FDUTPA, Florida Statute, section 501.2105. However, attorneys' fee awards under FDUTPA are discretionary and Plaintiff has not set out why the Court should award fees pursuant to FDUTPA. In *Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007), the court set out seven factors that a court should consider in determining whether to exercise its discretion and award fees under FDUTPA. Plaintiff's motion does not address any of these factors. Furthermore, having awarded Plaintiff her fees pursuant to the Lanham Act, any fees awarded pursuant to FDUTPA would be duplicative. Consequently, the Court declines to award Plaintiff attorneys' fees pursuant to FDUTPA.

In support of her Motion, Plaintiff has submitted detailed time sheet entries and multiple affidavits stating that attorneys' fees of $25,000 are reasonable under the circumstances. The Court finds that the total of 90.75 hours spent by Plaintiff's attorneys on this matter is reasonable and that the billing rates of Elliot Zimmerman of $350 an hour and Charlotte Towne of $250 an hour are reasonable. However, Plaintiff has failed to clearly set out how the total fee amount was calculated. When the Court did its own calculations, it calculated that the fees were slightly more than $25,000. However, since the affidavits only seek $25,000 that is what the Court will award.

21

Accordingly, it is

ORDERED that:

1)  Plaintiff's Renewed Motion for Final Default Judgment and Permanent Injunction [DE-28] is GRANTED IN PART as follows:

      a) The Court will enter a separate final judgment awarding damages, in the amount of $81,000, and attorneys' fees, in the amount of $25,000, and entering a permanent injunction;

      b) By **September 12, 2011**, Plaintiff shall file a separate motion for her taxable costs, as permitted by statute.

2)  All pending motions not otherwise ruled upon are DENIED as moot.

3)  This case is CLOSED.

DONE and ORDERED in Miami, Florida, this _30_ day of August, 2011.

                            PATRICIA A. SEITZ
                            UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

22